IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LESLIE G.,[1]           §
                        §
        Plaintiff,      §
                        §
v.                      §        5:21-CV-202-H-BR
                        §
COMMISSIONER, SOCIAL SECURITY   §
ADMINISTRATION,         §
                        §
        Defendant.      §

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO AFFIRM THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Leslie G. ("Leslie") seeks judicial review of the decision of the Commissioner of Social Security, who denied Leslie's application for disability insurance benefits under Title II of the Social Security Act ("SSA") for lack of disability. The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(c). After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## I.    PROCEDURAL BACKGROUND

Leslie applied for disability insurance benefits on July 25, 2018, alleging disability due to ataxia, tremors, neuropathy, depression, anxiety, dystonia, and hypothyroidism beginning September 23, 2017. (ECF 16-1 at 319, 330, 391). Leslie's application was initially denied on September 28, 2018 and was denied again upon reconsideration on January 24, 2019. (*Id.* at 205,

---

[1] It is the undersigned's practice to identify the plaintiff using only the first name and last initial in determinative opinions in Social Security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

213–14). A hearing was held on September 20, 2019, after which Leslie underwent psychiatric consultative examination, and a second hearing was held on September 8, 2020. (*Id.* at 44–113). The Administrative Law Judge Darren Hamner ("ALJ") issued an unfavorable decision on April 5, 2021, finding Leslie not disabled in his sequential analysis prescribed by Fifth Circuit law. (*Id.* at 18–32).

Specifically, at step one, the ALJ found Leslie had not engaged in substantial gainful activity since her alleged onset of disability date of September 23, 2017. (*Id.* at 24). At step two, the ALJ found Leslie suffered from the following severe impairments: disorder of the nervous system, degenerative disc disease of the cervical and lumbar spine, obesity, psychogenic tremors, major depressive disorder, generalized anxiety disorder, neurocognitive disorder due to traumatic brain injury, post-traumatic stress disorder, and a history of substance abuse. (*Id.* at 24). At step three, the ALJ found those severe impairments did not meet, and were not the equivalent of, any impairments listed in Appendix 1 of the Social Security regulations. (*Id.* at 24–26). Still at step three, the ALJ determined Leslie's residual functional capacity ("RFC"). (*Id.* at 26–30). The ALJ found Leslie had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a)[2] and 416.967(a) except that:

> She is able to lift and carry 5 pounds frequently and 10 pounds occasionally. She is able to stand and walk for 2 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. She is able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally but should never climb ropes, ladders, or scaffolds. She is able to perform frequent, but not constant fingering and handling with the right dominant

---

[2] The relevant Social Security regulation states:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

upper extremity. She should avoid hazards such as unprotected heights or dangerous moving machinery. She needs to use a cane to ambulate. She is limited to simple job tasks, defined as routine, repetitive tasks with little variation in duties and involving only simple judgment making.

(*Id.* at 26–27). At step four, the ALJ determined Leslie was not capable of performing her past relevant work as a housekeeper, an inspector, and a janitor, but that she can perform other work in the national economy. (*Id.* at 30–32). Accordingly, the ALJ found Leslie was not disabled under the SSA between the alleged onset date and the date the decision was issued. (*Id.* at 32).

The Appeals Council denied Leslie's request for review on July 20, 2021. (*Id.* at 7). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. § 405(g); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.     FACTUAL BACKGROUND

Leslie was 44 years old on the alleged onset of disability date, September 23, 2017. (*See* ECF 16-1 at 138). She completed the ninth grade and has obtained her GED. (*Id.* at 392). Her work history included employment as a housekeeper, an inspector, and a janitor. (*Id.* at 104).

## III.     STANDARD OF REVIEW

To evaluate a disability claim, the Commissioner follows a five-step sequential analysis to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not

4

substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices," or, "no contrary medical evidence," will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## IV.    DISCUSSION

In her Complaint (ECF 1), Opening Brief (ECF 25), and Reply (ECF 27) to Defendant's Response Brief, Leslie asserts that her impairments rendered her disabled under the SSA. Leslie seeks an order from the Court vacating the Commissioner's decision denying Leslie's claim for disability insurance benefits and remanding the matter for further administrative proceedings based on two grounds: (1) that the ALJ failed to articulate his reasoning for rejecting medical opinion evidence in the manner required by 20 C.F.R. §§ 404.1520c, 416.920c; and (2) that the ALJ failed to properly assess Leslie's testimony and failed to articulate the evidentiary basis for the manipulative limitations in the RFC. (ECF 25 at 7–16). The Commissioner responds that the ALJ properly considered the consistency and supportability of the medical opinion evidence in determining Leslie's mental RFC, as well as Leslie's subjective complaints in determining her

physical RFC. (ECF 26 at 2–9). For the reasons discussed below, the Court agrees with the Commissioner.

### A. Medical Opinion Evidence

On January 18, 2017, the SSA published *Revisions to Rules Regarding the Evaluation of Medical Evidence*, which revised the regulations regarding medical opinion evidence considered in disability determinations. 82 Fed. Reg. 5844. For claims filed on or after March 27, 2017, an ALJ no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)).

Instead, the ALJ shall consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including (a) length of the treatment relationship, (b) frequency of examinations, (c) purpose of the treatment relationship, (d) extent of the treatment relationship, and (e) examining relationship); (4) specialization; and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c). "The most important factors" for the ALJ to consider in "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . ." *Id.* § 404.1520c(a).

Therefore, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may, but is not required to, explain how he considered the other three factors when he articulates how he considered the medical opinions or prior administrative medical findings. *Id.* § 404.1520c(b)(2). The other three factors must be articulated,

however, if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" *Id*. § 404.1520c(b)(3). When one medical source provides multiple opinions, the ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id*. § 404.1520c(b)(1). The SSA makes clear that "[i]t is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id*. § 404.1520c(b)(1).

"Generally, there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec*., 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022). "At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Id*. (*citing Kinney v. Astrue*, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009), rec. adopted, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009)). "An opinion is unsupported if the physician did not provide a detailed explanation for the opinion or if the physician's own treatment notes do not support the physician's opinion." *Hubbard*, 2022 WL 196297, at *4 (internal citations and quotations omitted). An ALJ may not rely on his own unsupported opinion as to the limitations the applicant's medical conditions might present. *Cary G. T. v. Comm'r, Soc. Sec. Admin*., 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022).

### B. Dr. Gradel's Opinion

Consultative neuropsychologist Addison E. Gradel, Ed.D examined Leslie on December 6, 2019 for evaluation of tremors, depression, anxiety, dystonia, and anxiety. (ECF 16-1 at 944–48). Dr. Gradel conducted a clinical interview, reviewed Leslie's medical records, and

administered the following four procedures: Wechsler Adult Intelligence Scales IV, Wide Range Achievement Test 5, Weschler Memory Scale IV, and Trails Test A and B. (*Id*.). In her Medical Source Statement, Dr. Gradel concluded that Leslie had no limitations to understand and remember simple instructions, carry out simple instructions, or the ability to make judgments on simple work-related decisions. (*Id*. at 941–43). Dr. Gradel concluded that Leslie had mild limitations in interacting appropriately with the public, supervisors, and co-workers. (*Id*.). Lastly, Dr. Gradel concluded that Leslie had marked limitations to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to unusual work situations and to changes in a routine work setting. (*Id*.). Dr. Gradel determined that Leslie would have "marginal" ability to manage her own benefits. (*Id.* at 948).

The ALJ determined that "[t]he severity of the claimant's mental impairments, considered singly (*sic*) and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.11, or 12.15." (ECF 16-1 at 24). Specifically, the ALJ found:

> Dr. Gradel's opinion to be generally consistent with and supported by the evidence except I disagreed that the evidence is consistent with a conclusion that the claimant has marked limitation in her ability to respond appropriately to usual work situations and to changes in routine work setting.

(ECF 16-1 at 30). Leslie contends that "[a]bsent from that evaluation is any articulation of the ALJ's reasoning," specifically as to supportability and consistency. (ECF 25 at 14). Leslie alleges that "the ALJ did not cite to any evidence with which he found portions of the opinion inconsistent," and further, that "there is no evidence with which Dr. Gradel's opinion could be inconsistent." (*Id*. at 15). Leslie asserts that the ALJ "appears to have rejected a portion of the medical opinion merely because he 'disagreed' with the medical professional." (*Id*.).

The Undersigned concludes that the ALJ sufficiently explained on what evidentiary basis he rejected Dr. Gradel's opinion regarding tolerating stress or changes in routine, and that

substantial evidence in the record supports such findings. Specifically, the ALJ rejected that portion of Dr. Gradel's opinion as inconsistent with Leslie's prior statements, limited mental status findings that were generally within the normal limit, and her past conservative mental health treatment. (ECF 16-1 at 29). The ALJ specifically refers to Dr. Gradel's December 6, 2019 psychological consultive examination and findings, indicating that (1) Leslie's speech was normal or within the normal limit; (2) Leslie's IQ score placed her in the mildly below normal range; and (3) Leslie's overall level of performance placed her in the mildly below normal/borderline intellectual functioning range when compared to others her age. (ECF 16-1 at 29, 941–48). Dr. Gradel concluded that while Leslie's overall visual memory was severely below the normal limit, her thought content was coherent and logical. (*Id*.). The ALJ noted that Dr. Gradel's notes indicate that Leslie reported that she did not require "unusual assistance in bathing, dressing, or in other personal hygiene areas; and that she chooses her own clothes and go [*sic*] grocery shopping." (*Id*. at 29, 945). Overall, the ALJ concluded that Leslie's "mental status findings during the period at issue were mostly good and included being fully oriented, normal speech, obeys simple commands, and normal or appropriate mood." (*Id*. at 29, 637, 875, 880, 889, 901). Lastly, the ALJ noted that Leslie has had "no inpatient hospitalizations for intensive psychiatric treatment or urgent emergency room care for emotional crises and has been treated conservatively." (*Id*. at 29).

The Undersigned finds, therefore, that the ALJ sufficiently articulated his findings and conclusions to permit meaningful judicial review and that substantial evidence in the record supports those findings. While the ALJ's conclusion that Dr. Gradel's opinion is generally consistent with and supported by the evidence, except for her ability to respond appropriately to usual work situations and to changes in routine work setting, may appear somewhat conclusory, this statement follows the ALJ's preceding discussion of Dr. Gradel's records. (ECF 16-1 at 29–

30). The ALJ was free to reject those portions of Dr. Gradel's opinion that were inconsistent with Dr. Gradel's own treatment notes and the record as a whole. *See Hubbard*, 2022 WL 196297, at *4.

Finally, Leslie argues that the ALJ rejected the portion of Dr. Gradel's opinion "merely because he 'disagreed' with the medical professional." (ECF 25 at 15). "The ALJ also may not rely on his own unsupported opinion of the limitations the applicant's medical conditions might present." *Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-1948-BK, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (*citing Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). RFC determinations are "not medical opinions . . . they are administrative findings." 20 C.F.R. § 404.1527(d); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("What Taylor characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work."). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988) (per curiam). The determination of an applicant's RFC is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ states that he "fully considered the medical opinions and prior administrative medical findings," including impartial medical expert Dr. Goldstein's testimony that Leslie would likely be able to perform medium level work, Disability Determination Services' ("DDS") doctors determination that Leslie would be able to perform a range of light work with additional postural limitations, and state agency psychological consultants' determination that Leslie has no severe mental medically determinable impairment. (ECF 16-1 at 30, 114–124, 125–135, 138–148, 149–159, 162–175, and 176–189). The ALJ found that those opinions were not persuasive where there

was "new evidence at the hearing level (including testimony) that justifies additional exertional and non-exertional limitations," and the combined effects of the impairments supported the ALJ's conclusion that "claimant is more limited than the DDS previously determined." (*Id*.). Therefore, the Undersigned finds that the ALJ interpreted the medical evidence and did not improperly rely on his own lay opinion in determining the RFC.

### C. Plaintiff's Subjective Complaints

The Court finds that the ALJ properly considered Leslie's subjective complaints in determining the physical limitations in her RFC. The ALJ considered Leslie's testimony at the hearing that she is able to sign her name but not write a letter using her right hand, that she performs daily exercises for her right arm, and that she has difficulty grasping with her right hand. (ECF 16-1 at 27). The ALJ found, however, that "the evidence only partially supports her allegations." (*Id*.). Leslie argues that the ALJ'S RFC determination failed to point to any specific evidence establishing that her allegations were unsupported. (ECF 25 at 16–20). The Undersigned finds that the ALJ did sufficiently identify medical findings inconsistent with Leslie's subjective complaints. Specifically, the ALJ states that treatment notes from September 2017 show Leslie's symptoms, namely "shaking and problems with coordination after drinking four beers," were resolved immediately with Ativan. (*Id*. at 27, 654). Similarly, treatment notes from November 2017 through November 2018 generally indicate that Leslie had normal musculoskeletal range of motion, normal strength, with normal sensory and motor function, including two MRIs within the normal limits. (*Id*. at 28, 663–64, 688, 721, 736, 820–23, 853–56, 867–68, 896, 905). Treatment notes from March 2018 indicate that Leslie had no problems with her hands, including her grip. (*Id*. at 28, 820). While the December 2017 and February 2018 treatment notes indicate use of a cane (*Id*. at 28, 717–20, 840), the remaining treatment notes through December 2019 either expressly note that

no cane was used or do not indicate cane usage. (*Id*. at 863, 867–68, 905, 944). Overall, the ALJ found that "although the claimant received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature, with no surgical intervention required." (*Id*. at 28); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (ALJ may rely on objective evidence as useful indicator in evaluating subjective complaints).

Leslie contends that the RFC determination is in conflict with the ALJ's conclusion that "there is no indication in the record that [Leslie] has had any limitations with regard to grasping, handling, feeling, and fingering objects that would prevent him [*sic*] from being able to lift and carry 10 pounds occasionally and 5 pounds frequently as required for sedentary work." (ECF 16-1 at 28; ECF 25 at 17). The Commissioner responds that the ALJ considered Leslie's subjective complaints, but that the objective evidence did not support limitations beyond those articulated in the RFC. (ECF 26 at 5).

Leslie alleges that it is "unclear why Plaintiff's subjective allegations would now be discarded as inconsistent with the musculoskeletal findings the ALJ previously conceded would constitute an unfair basis for the decision." (ECF 25 at 18). In that regard, Leslie relies on a statement made by the ALJ at the initial hearing, where he states: "I don't think it would be fair to her to have [a decision] based on what I have if there's a possibility when [*si*c] I can develop some of this just a little bit more." (*Id*.; ECF 16-1 at 54). "The Fifth Circuit imposes a duty on an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 325 (S.D. Tex. 2008) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). The ALJ's decision to order a consultative examination with a neuropsychologist after the initial hearing is not a concession that the evidence presented at the time was insufficient, but rather part of the ALJ's duty to fully develop the record. Disability

decisions "must stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). By the same principle, Leslie cannot rely on statements made by the ALJ at the hearing that were not set forth in the ALJ's final decision.

The ALJ was not required to discuss every piece of evidence. *See Castillo v. Barnhart*, 151 F.App'x 334, 335 (5th Cir. 2005) (per curiam). Again, the ALJ stated that he "fully considered the medical opinions and prior administrative medical findings," including Dr. Goldstein's testimony that Leslie would likely be able to perform medium level work, DDS doctors' determination that Leslie would be able to perform a range of light work with additional postural limitations, and state agency psychological consultants' determination that Leslie has no severe mental medically determinable impairment. (ECF 16-1 at 30, 114–124, 125–135, 138–148, 149–159, 162–175, and 176–189). As stated previously, the ALJ found that these opinions were not persuasive, because "new evidence at the hearing level (including testimony) that justifies additional exertional and non-exertional limitations," and the combined effects of the impairs supported the ALJ's conclusion that "claimant is more limited than the DDS previously determined." (*Id*. at 30).

The ALJ's decision reflects that he properly considered the credibility of Leslie's testimony. The ALJ discounted Leslie's subjective complaints concerning the intensity, persistence, and limiting effects of her symptoms based on her statements regarding her ability to perform household functions, her "largely stable clinical and diagnostic findings or by her longitudal treatment record." (ECF 16-1 at 29–30). The ALJ reasonably concluded that the medical evidence and other evidence as a whole does not indicate that Leslie's ability to perform basic work activities is as limited as she asserts.

## V.   **RECOMMENDATION**

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Commissioner's decision be AFFIRMED.

## VI.   **INSTRUCTIONS FOR SERVICE**

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO ORDERED.

ENTERED September 27, 2022.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## **\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).