UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LESLIE G.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 5:21-CV-202-H-BR |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

United States Magistrate Judge Lee Ann Reno made Findings, Conclusions, and a Recommendation (FCR) regarding the final adverse decision of the Commissioner of Social Security on September 27, 2022. Dkt. No. 28. Judge Reno recommended that the Court affirm the Commissioner's decision. *Id.* at 14. The plaintiff filed objections to the FCR. Dkt. No. 29. For the reasons stated below, the Court accepts and adopts the FCR. The Court affirms the final adverse decision of the Commissioner and dismisses this case.

**1.    Factual and Procedural Background**

In July 2018, the plaintiff filed applications for disability-insurance benefits and supplemental-security-income benefits. Dkt. No. 16-1 at 21. The Social Security Administration denied the plaintiff's claims initially and upon reconsideration. *Id.* After these denials, the plaintiff requested a hearing. *Id.* The ALJ held a telephonic hearing in September 2020, with an impartial medical expert, an impartial vocational expert, and the plaintiff—represented by her attorney—all testifying. *Id.* After the hearing, the ALJ determined that the plaintiff was not disabled. *Id.* at 32.

To reach his determination, the ALJ conducted the five-step sequential evaluation applicable in social-security-disability cases. *Id.* at 22–32; *see Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since September 23, 2017. Dkt. No. 16-1 at 24. At step two, the ALJ found the claimant has the following severe impairments: disorder of the nervous system, degenerative disc disease of cervical spine, lumbar degenerative disc disease, obesity, psychogenic tremors, major depressive disorder, generalized anxiety disorder, neurocognitive disorder due to traumatic brain injury, post-traumatic stress disorder, and a history of cocaine and alcohol abuse. *Id.* At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that are listed in, or equal in severity to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found that the claimant had the residual functional capacity (RFC) to perform a range of sedentary work, with the following exceptions:

> [The plaintiff] is able to lift and carry 5 pounds frequently and 10 pounds occasionally. She is able to stand and walk for 2 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. She is able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally, but should never climb ropes, ladders, or scaffolds. She is able to perform frequent, but not constant, fingering and handling with the right dominant upper extremity. She should avoid hazards such as unprotected heights or dangerous moving machinery. She needs to use a cane to ambulate. She is limited to simple job tasks, defined as routine, repetitive tasks with little variation in duties and involving only simple judgment making.

*Id.* at 26–27. Finally, at step five, the ALJ found that even though the plaintiff could not perform any past relevant work, she is capable of performing work in the national economy. *Id.* at 30–31. Because the ALJ did not find for the plaintiff at steps three and five, the ALJ found that the plaintiff was not disabled. *Id.* at 32.

The plaintiff requested review of the ALJ's decision from the Social Security Appeals Council. *Id.* at 7. The Appeals Council denied the plaintiff's request for review. *Id.* As a result, the plaintiff appealed to this Court for review of the ALJ's decision. Dkt. No. 1. The plaintiff filed a brief in support of her appeal (Dkt. No. 25), the Commissioner responded (Dkt. No. 26), and the plaintiff replied (Dkt. No. 27). The magistrate judge thereafter issued her FCR recommending that the Court affirm the administrative decision. Dkt. No. 28. The plaintiff timely filed objections to the FCR. Dkt. No. 29.

## 2. Legal Standards

In evaluating a disability claim, an ALJ performs a five-step analysis to determine whether: "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in [A]ppendix 1 of the [S]ocial [S]ecurity regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler*, 501 F.3d at 447–48; *see* 20 C.F.R. § 404.1520. "If, at any step, the claimant is determined to be disabled or not disabled, the inquiry is terminated." *Audler*, 501 F.3d at 448. "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the [ALJ] must show that there is other substantial work in the national economy that the claimant can perform." *Id.*

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In reviewing an ALJ's eligibility determination, a court must "ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the [ALJ] used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  It is more than a mere scintilla and less than a preponderance." *Id.* (quoting *Ripley*, 67 F.3d at 555).  A reviewing court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)).  Further, "[c]onflicts in the evidence are for the [ALJ] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

Generally, a court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  But de novo review only applies to objections that are "specific and clearly aimed at particular findings in the magistrate judge's proposal." *Rudder v. U.S. Gov't*, No. 5:22-CV-062-H-BQ, 2022 WL 17831399, at *2 (N.D. Tex. Dec. 21, 2022) (internal citation omitted); *see* Fed. R. Civ. P. 72(b)(2).  "[A]n objection that merely restates general arguments already presented to the magistrate judge is not specific." *Nolen-Davidson v. Soc. Sec. Admin.*, No. 4:20-CV-01085-P, 2021 WL 4476763, at *1 (N.D. Tex. Sept. 30, 2021).  Therefore, a court "need not review an FCR de novo if a party's objections are merely recitations of arguments already made to and rejected by the magistrate judge." *Mindy C. v. Kijakazi*, No. 1:20-CV-222-H-BU, 2022 WL 3210357, at *2 (N.D. Tex. Aug. 9, 2022).  Similarly, an objection that merely disagrees with a recommendation or summarizes what has been presented before cannot trigger de novo review.  *Hernandez v. United States*, No. PE:11-CR-442-RAJ(1), 2016 WL 6998387, at *16 (W.D. Tex. Apr. 26, 2016).  Rather, in such cases, a court reviews the FCR for plain error alone.  *See Freeman v. Am. Credit*

*Acceptance, LLC*, No. 4:20-CV-01211-P-BP, 2021 WL 1015956, at *2 (N.D. Tex. 2021) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)).

3.   **Analysis**

   A.   **Because the plaintiff merely restates arguments previously made to the magistrate judge, the Court need only review the FCR for plain error, and it finds none.**

The plaintiff raises the same arguments in her objections that she did in her brief on appeal. In each case, she contests the same two aspects of the ALJ's determination: (1) the alleged failure of the ALJ to "articulate his reasoning for rejecting medical opinion evidence in the manner required by 20 C.F.R. §§ 404.1520c, 416.920c," and (2) the alleged failure of the ALJ to "properly assess [the] [p]laintiff's testimony" and to "articulate the evidentiary basis for the manipulative limitations in the RFC." Dkt. Nos. 25 at 5; 29 at 1, 7. Essentially, the plaintiff repeats the same arguments in an attempt to achieve a different outcome in this setting. But her rehashing of arguments that were already thoroughly considered and expressly rejected by the magistrate judge cannot trigger de novo review. *See Welsh v. Lubbock County*, No. 5:19-CV-00255-H, 2022 WL 278550, at *1 (N.D. Tex. Jan. 31, 2022) (adopting an FCR to the extent the plaintiff restated arguments "thoroughly addressed by the FCR"). Rather, the Court need only review the FCR for plain error. And, here, it finds none. Nevertheless, out of an abundance of caution, the Court will consider the plaintiff's arguments de novo, as discussed below.

   B.   **In any event, substantial evidence supports the ALJ's determination, and the ALJ used the proper legal standards to evaluate the evidence.**

Reviewing the FCR de novo, the Court agrees with the magistrate judge that the ALJ properly considered the evidence and applicable legal standards in reaching his determination. The Court addresses each of the plaintiff's objections in turn.

– 5 –

### i. The ALJ properly considered both the supportability and consistency of the evidence with Dr. Gradel's opinion.

The plaintiff first claims that the ALJ failed to support his rejection of Dr. Gradel's opinion that the plaintiff "has marked limitation in her ability to respond appropriately to usual work situations and to changes in routine work setting." Dkt. No. 29 at 3 (quoting Dkt. No. 16-1 at 30). The plaintiff contends that the ALJ failed to cite any evidence that contradicts Dr. Gradel's opinion but merely relied on his own unsupported, unprofessional opinion. *Id.* at 6. The Court disagrees.

For disability claims filed after March 27, 2017, when assessing a claimant's RFC, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must consider five factors in weighing the persuasiveness of a medical opinion. § 404.1520c(a), (c). Of those factors, supportability and consistency of the opinion are the most important and, generally, the only ones that the ALJ must discuss in his determination. § 404.1520c(b)(2), (c). "At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Hubbard v. Soc. Sec. Admin.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022). An ALJ "may not rely on his own unsupported opinion" in deriving the claimant's RFC. *Cary G. T. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1948-BK, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022).

Here, the ALJ sufficiently explained his basis for rejecting Dr. Gradel's opinion regarding the plaintiff's ability to tolerate normal stress or changes to routine. In doing so, the ALJ referred to specific findings in Dr. Gradel's report that: (1) the plaintiff's speech was within the normal range; (2) her IQ was only mildly below the normal range; and (3) her

– 6 –

overall level of performance placed her only mildly below the normal intellectual-functioning range respective to others her age. Dkt. No. 16-1 at 29, 946–48. The ALJ also considered the plaintiff's own statements that she executes routine tasks like bathing, dressing, and grocery shopping without "unusual assistance" and no longer uses cocaine. *Id.* at 29. Additionally, the ALJ underscored the plaintiff's history of "conservative" mental-health treatment, noting that the plaintiff "has had no inpatient hospitalizations for intensive psychiatric treatment or urgent emergency room care for emotional crises." *Id.* at 28–29. Moreover, the ALJ pointed to "the [plaintiff's] mental status findings during the period at issue," which included "being fully oriented, normal speech, obeys simple commands, and normal or appropriate mood." *Id.* at 29, 637, 875, 880, 889, 901. In light of this evidence, although the ALJ generally found the rest of Dr. Gradel's opinion to be supported by and consistent with the evidence, he found the opinion that the plaintiff had "marked limitation" in responding to usual work situations and changes in routine work setting to be inconsistent with the evidence.[1] *Id.* at 30.

The plaintiff acknowledges the ALJ's discussion of this evidence but claims that it does not support his rejection of Dr. Gradel's opinion because it "came earlier in the [ALJ's] decision." Dkt. No. 29 at 3–4. The plaintiff thus accuses the ALJ of "relying on his own unsupported lay opinion as to the impact of [the] [p]laintiff's medical conditions." *Id.* at 6. This accusation is unfounded. The ALJ carefully discussed the evidence shortly before stating his conclusion regarding Dr. Gradel's opinion. Dkt. No. 16-1 at 28–30. The Court

---

[1] The plaintiff claims that the ALJ only addressed supportability—not consistency—because the ALJ cited Dr. Gradel's own findings when rejecting the opinion at issue. Dkt. No. 29 at 4–5. Contrary to the plaintiff's assertion, however, the ALJ cited other evidence in the record, as discussed above. Therefore, he properly articulated the basis for his finding that the evidence was inconsistent with Dr. Gradel's opinion.

will not discount this discussion just because it did not occur in the immediately preceding paragraph.  *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (holding that an ALJ's lack of prescription to "formalistic rules in his articulation [of the evidence] compromise[d] no aspect of fairness or accuracy" in his determination).  Where, as here, the record shows that the ALJ considered the relevant evidence in determining the plaintiff's RFC, "what [the plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine h[er] capacity for work."  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  Therefore, based on the evidence articulated by the ALJ, the Court finds that the ALJ properly evaluated Dr. Gradel's opinion and the magistrate judge properly recommended affirmance.

     **ii. The ALJ properly evaluated the plaintiff's subjective complaints and articulated the basis for his physical RFC determination.**

  The plaintiff next claims that the ALJ failed to articulate how the plaintiff's subjective complaints were inconsistent with the evidence in the record.  Dkt. No. 29 at 8.  The plaintiff further argues that the ALJ failed to discuss the supportive findings from the neuropsychological examination that he ordered the plaintiff to undergo after the hearing.  *Id.* at 9.  These arguments are unpersuasive.

  "[T]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled."  *Nugent v. Astrue*, 278 F. App'x 423, 427 (5th Cir. 2008) (quoting *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)).  Therefore, an ALJ's analysis regarding a plaintiff's subjective complaints is "entitled [to] considerable deference," so long as the ALJ "weighs the objective medical evidence and assigns articulated reasons for discrediting the [plaintiff's complaints]."  *Id.* (internal citations omitted).

The ALJ properly articulated the basis for his finding that the plaintiff did not have manipulative limitations to the extent alleged. First, the ALJ pointed to the plaintiff's testimony that she can sign her name and performs daily exercises for her right arm. Dkt. No. 16-1 at 27. The ALJ also noted medical reports stating that the plaintiff "had normal musculoskeletal range of motion, normal strength, and no swelling with sensory and motor functions intact neurologically." *Id.* at 28; *see, e.g., id.* at 823, 856, 861, 896. Further, he highlighted treatment notes showing that the plaintiff's "shaking and problems with coordination after drinking . . . resolved immediately" with medication. *Id.* at 27, 654. Other treatment records referenced by the ALJ showed that the plaintiff had no recent falls, and, although some records noted cane use, others did not. *Id.* at 28, 717, 720, 840, 846, 863, 905, 944. The ALJ also noted two MRIs that yielded results within normal limits. *Id.* at 28, 867. The ALJ further reasoned that "although the claimant received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature, with no surgical intervention required." *Id.* at 28.

Although the ALJ found that "[t]he medical evidence is consistent with a conclusion that the [plaintiff] has had some limitation" since her alleged disability onset date, he found that her "subjective complaints and limitations are simply not consistent with or supported by her largely stable clinical and diagnostic findings or by her longitudinal treatment record." *Id.* at 27, 30. Therefore, the ALJ concluded that:

> [T]here is no indication in the record the claimant has had any limitations with regard to grasping, handling, feeling, and fingering objects that would prevent h[er] from being able to lift and carry 10 pounds occasionally and 5 pounds frequently as required for sedentary exertion work. I was also not persuaded that she would have too much pain or malaise that would preclude her from standing or walking for 2 hours total in an 8-hour workday or that would prevent her from sitting for 6 hours total in an 8-hour workday with the use of a cane.

*Id.* at 28–29.  The Court finds that the evidence articulated by the ALJ supports his physical RFC finding.

The plaintiff misconstrues the ALJ's finding as wholly rejecting any limitation on her ability to grasp and handle objects (Dkt. No. 29 at 8); however, the ALJ made clear that he found no limitation only with respect to the plaintiff's ability to "lift and carry 10 pounds occasionally and 5 pounds frequently as required for sedentary exertion work."  Dkt. No. 16-1 at 28.  The ALJ's measured language and conservative conclusion thus reflects that he properly considered the plaintiff's complaints.

Moreover, the plaintiff argues that because the ALJ ordered her to undergo further medical examination after the hearing, he erred by neglecting to "mention the supportive results" of that examination.  Dkt. No. 29 at 9.  But "[t]hat [an] ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."  *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005).  Contrary to the plaintiff's claim, the ALJ's decision to order another examination was not a concession that the other evidence in the record lacked probative value.  Rather, the ALJ reasoned that another examination "would be in [the plaintiff's] interest" in case "there[] [was] a possibility [that] [he] [could] develop some of [the evidence] just a little bit more."  Dkt. No. 16-1 at 54.  He thus properly sought to develop the record to ensure that additional evidence would not impact his determination based on existing evidence—and, here, it did not.  The ALJ did, however, highlight a note from the supplemental examination that the plaintiff was "ambulatory without assistance though . . . had a slow and spastic gait."  *Id.* at 28, 944.  Therefore, the Court finds that the ALJ properly considered the evidence and

articulated the findings material to his physical RFC determination, and the magistrate judge properly recommended affirmance.

4.      **Conclusion**

Having reviewed the FCR in light of the plaintiff's objections, the Court accepts and adopts the FCR (Dkt. No. 28).  The Court affirms the final adverse decision of the Commissioner and dismisses this case.

So ordered on March 16, 2023.

                                                                                            _____
                                                                       JAMES WESLEY HENDRIX
                                                                       UNITED STATES DISTRICT JUDGE